24CA0014 Peo v Adams-Cobb 07-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0014
Arapahoe County District Court No. 22CR1391
Honorable Jacob Edson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dominique Adams-Cobb,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHUTZ
Lipinsky and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Cynthia A. Harvey, Alternate Defense Counsel, Aurora, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Dominique Adams-Cobb, appeals the judgment of conviction entered against him for (1) three counts of first degree assault, (2) one count of attempted murder; and (3) one count of illegal discharge of a firearm.  We affirm the judgment of conviction.

## I.    Background and Procedural History

¶ 2    The jury heard evidence from which it could reasonably have found the following facts.

¶ 3    Adams-Cobb and Shantiana Shorts — one of the victims — were in a romantic relationship and share one child.  Their coparenting relationship was tumultuous.  Eventually, Adams-Cobb started dating Vonice Little and Shorts dated the other victim, Tremayne David.

¶ 4    Shorts shared an apartment with David, their nine-month-old child, and the child she shared with Adams-Cobb.  On June 21, 2022, Adams-Cobb served Shorts with custody papers, and they exchanged heated text messages throughout the day.  During the exchange, Adams-Cobb wrote to her that he would "get the last laugh" and that Little was going to beat up Shorts.  He also stated that he wanted to fight David, and that he arranged to have people assault David and Shorts.  Shorts replied that the exchange was

helping build her case against him, to which he replied, in pertinent part, "[Y]o momma gone die [and] u gone be a bum with nothing . . . ." Someone[1] also posted a message from a Facebook account belonging to Adams-Cobb that said, "If u watching I just won't you dead that's it [hugging face emoji], [shrug emoji], I said it." The same account included a posting that said, "You should be sleep in the dirt . . . sep shudd have Ben yo day [beaming face with smiling eyes emoji], [face with crossed-out eyes emoji] von."[2]

¶ 5       Shortly after midnight on June 22, David received a text message from Adams-Cobb that read, "Stay yo bitch ass up I'm coming." Shorts testified that, while she was arguing with Adams-Cobb via text message, David returned home from work with a friend. David, Shorts, and Adams-Cobb ended up on a phone call together after someone merged the calls. During the call, Adams-Cobb said that he was outside Shorts's apartment complex.

¶ 6       Shorts remained on the phone with David while he and the friend inspected both entrances to the apartment complex's garage.

---

[1] There was some evidence at trial that Adams-Cobb's Facebook account was hacked on June 21.
[2] It is unclear whether "von" referred to King Von (Dayvon Daquon Bennett), a rapper known for his violent lyrics, or Little.

Shorts joined David in the garage and watched while he checked their surroundings.  At that point, they saw someone drive up in a white Chevy Impala, which Shorts recognized as belonging to Adams-Cobb.  Shorts testified that the driver of the Impala fired three or four gunshots out the driver's side window.  She immediately called the police.

¶ 7     David stood near the back passenger door on the driver's side of his car when the shots were fired.  The right side of David's car was damaged.  Police officers recovered shell casings from a Federal .40 caliber cartridge from the street in front of the driveway.  Officers also removed bullet fragments and a slug from one of David's tires.

¶ 8     When the police arrived at the apartment complex, Shorts told the officers about Adams-Cobb's alleged threat to her mother and police officers were dispatched to her mother's home.

¶ 9     Officers arrested Adams-Cobb about ten hours after the shooting.  Division of Motor Vehicles records connected Adams-Cobb to a white Chevy Impala.  About three days after the shooting, while Adams-Cobb was in jail, the Impala registered to Adams-Cobb was sold to a third party.  Adams-Cobb was identified

as the seller. Police officers subsequently recovered unfired .40 caliber cartridges and an empty box of Federal ammunition from Adams-Cobb's bedroom.

¶ 10 While being interrogated in jail, Adams-Cobb told a detective that he did not own any guns or ammunition and that he had never owned a white Chevy Impala.

¶ 11 After a trial, the jury convicted Adams-Cobb of (1) illegal discharge of a firearm; (2) first degree assault (extreme indifference) as an act of domestic violence against Shorts; (3) first degree assault (extreme indifference) against David; (4) first degree assault (deadly weapon) against David; and (5) attempted first degree murder with a deadly weapon (extreme indifference) against David. The jury acquitted him of the remaining charges.

¶ 12 The trial court sentenced Adams-Cobb to a total of twenty-nine years in the custody of the Department of Corrections.

## II. CRE 404 Claims

¶ 13 Adams-Cobb contends that the trial court admitted three categories of evidence in violation of CRE 404(b): evidence of a 2020 shooting incident involving Shorts (the 2020 incident); Shorts's testimony that she feared retaliation from Adams-Cobb if she

cooperated with the police investigation into the 2020 incident; and evidence that Adams-Cobb threatened Shorts's mother. We address each contention in turn.

## A. Applicable Law

### 1. Standard of Review and Preservation

¶ 14 Adams-Cobbs preserved his first two CRE 404(b) contentions. We review preserved claims regarding a trial court's evidentiary rulings for an abuse of discretion. *Romero v. People*, 2017 CO 37, ¶ 11. "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *People v. Johnson*, 2021 CO 35, ¶ 16 (citations omitted). Under this standard, "we ask not whether we would have reached a different result but, rather, whether the trial court's decision fell within the range of reasonable options." *People v. Archer*, 2022 COA 71, ¶ 23 (quoting *Hall v. Moreno*, 2012 CO 14, ¶ 54).

¶ 15 Adams-Cobb's third CRE 404(b) contention, relating to his alleged threat against Shorts's mother, is unpreserved. We therefore review it for plain error. *See Martinez v. People*, 2015 CO 16, ¶ 12. "To qualify as 'plain' error, an error must be so clear-cut, so obvious, that a trial judge should be able to avoid it without

benefit of objection." *People v. Pollard*, 2013 COA 31M, ¶ 39.

Under plain error review, we reverse only if the error was obvious

and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14.

### 2. The Admissibility of CRE 404 Evidence

¶ 16    Relevant evidence — that which has "any tendency to make

the existence of any fact that is of consequence to the determination

of the action more probable or less probable than it would be

without the evidence," CRE 401 — is admissible unless its probative

value is "substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of

cumulative evidence," CRE 403.

¶ 17    Under CRE 404(a), "[e]vidence of a person's character or a trait

of that person's character is not admissible for the purpose of

proving that the person acted in conformity therewith on a

particular occasion" unless the evidence fits into a pertinent

exception.  Similarly, under CRE 404(b), "[e]vidence of any other

crime, wrong, or act is not admissible to prove a person's character

in order to show that on a particular occasion the person acted in

conformity with the character."  CRE 404(b)(1).  But such evidence

may be used to prove "another purpose, such as . . . motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  CRE 404(b)(2).

¶ 18     To determine whether evidence is admissible under CRE 404(b), we apply the four-part test announced in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).  That test asks whether (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance of the evidence is independent of the inference that the defendant acted in conformity with a bad character; and (4) the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.  *Id.* at 1318.

## B.     The 2020 Incident

¶ 19     We first address Adams-Cobb's claim that the trial court abused its discretion by admitting evidence related to the 2020 incident.

### 1.     Additional Facts

¶ 20     In September 2020 — while Adams-Cobb and Shorts were still in a romantic relationship — they started arguing in front of their home.  Shorts allegedly walked away from Adams-Cobb, at which

point he fired a gun and the bullet landed behind her. Police responded and spoke with Adams-Cobb, who was sitting in a white Chevy Impala parked in front of their home. Officers found a gun inside the car.

¶ 21     Shorts refused to cooperate with the investigation into the 2020 incident because of her romantic feelings for Adams-Cobb, his alleged warning that she would be a "rat" if she testified against him, and his blaming her for getting him into trouble.

¶ 22     In September 2022 — in advance of the trial — the prosecution filed a notice of intent to introduce evidence of the 2020 incident under CRE 404(b). Defense counsel responded that Adams-Cobb had not been convicted of any crime related to the 2020 incident.

¶ 23     The trial court concluded that evidence of the 2020 incident was admissible after applying the *Spoto* test. Specifically, the court found that the 2020 incident was relevant because

> [i]t relates to whether Mr. Adams-Cobb was aware, knew of the victims in this case; whether he was armed; whether he drives . . . a white Chevy Impala; whether that Chevy Impala was in front of the victim's home during this alleged incident; whether it was, in fact, Mr. Adams-Cobb who shot a firearm into

the alleged victim's home; and his motive and intent in doing so.

The [c]ourt finds that the evidence is logically relevant by [tending] to make those material facts more probable. The [c]ourt finds that that logical relevance is independent of an intermediate inference that the defendant has bad character; that is, a jury does not have to find Mr. Adams-Cobb to be a bad person and therefore acted in conformity with that bad character here to find that the evidence is relevant.

¶ 24     As it relates to whether the 2020 incident was barred by CRE 403, the court found:

As with most analyses, the issue really comes down to whether the probative value is substantially outweighed by the danger of unfair prejudice. The unfair prejudice here — or the prejudice, I should say, is that . . . there is evidence that Mr. Adams-Cobb did something very, very, very, very similar less than two years prior to the allegations here to the same victim with a firearm, driving the same car, and that a jury is going to conclude that it is more likely that he did this because he did that in the past. That's not unfair prejudice. That is simply prejudice.

Unfair prejudice would be a jury reaching a conclusion that the defendant had [a] propensity to do things because he's a bad person. Here, the probative value of the evidence is extremely strong. It is strong evidence that the defendant had the required mental state; that he intended to shoot at the

9

victim as opposed to some accident; the fact that he tried to do this before. . . .

¶ 25 While testifying about the 2020 incident at trial, Shorts stated that she did not cooperate with the police because she was concerned about disrupting Adams-Cobb's relationship with their child and because, at the time, she still had strong feelings for him. She also indicated that she feared what he might do to her if she cooperated with the police.

¶ 26 Shorts further testified that she believed the June 2022 Facebook posts in Adams-Cobb's account, "I just won't you dead that's it [hugging face emoji], [shrug emoji]I said it" and "You should be sleep in the dirt . . . sep shudd Ben yo day [beaming face with smiling eyes emoji], [face with crossed-out eyes emoji] von," referred to the 2020 incident.

¶ 27 Prior to Shorts's testimony, the trial court issued a limiting instruction to the jurors, telling them that they could only consider the evidence of the 2020 incident for purposes of intent, identity, and motive, and no other purpose. The court reminded the jurors of this admonition as part of its final instructions before the jurors began deliberating.

## 2.    Analysis

¶ 28    Adams-Cobb contends that admitting Shorts's testimony concerning the 2020 incident violated the third *Spoto* prong — which requires that, for evidence to be admissible, the evidentiary relevance of the prior bad act must be logically independent of an inference that the defendant acted in conformity with any bad character associated with the act.  795 P.2d at 1318.  Adams-Cobb relies on *Yusem v. People*, 210 P.3d 458, 467 (Colo. 2009), in which the supreme court held that it was error to admit prior bad act evidence that was too dissimilar from the charged conduct to be relevant and, therefore, any relevance would have been based on the prohibited propensity inference.  He argues that the same rationale should have barred testimony regarding the 2020 incident.

¶ 29    He also contends that the evidence fails the fourth *Spoto* prong, which requires that the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, because the very nature of the evidence — an alleged domestic violence incident — is highly prejudicial and has the potential to

11

trigger sympathy for Shorts and a desire for the jury to punish Adams-Cobb. *See* 795 P.2d at 1318.

¶ 30    The People respond that the trial court did not abuse its discretion by finding that the evidence satisfied the third and fourth *Spoto* prongs because the record supports the court's findings. We agree with the People.

¶ 31    Adams-Cobb's reliance on *Yusem* is misplaced. True, as he argues, the supreme court found that the evidence admitted in that case violated the *Spoto* test because it was too dissimilar to the charged conduct. But in reaching that conclusion, the supreme court distinguished two prior cases relied on by the People:

> [P]rior act evidence was admissible in both *Douglas* [*v. People*, 969 P.2d 1201 (Colo. 1998),] and [*People v.*] *Willner*[, 879 P.2d 19 (Colo. 1994),] because it demonstrated the defendant's tendency to use a gun in a particular manner in specific circumstances, and therefore rebutted the claim that the defendant acted in self-defense when similar circumstances arose. Additionally, because the prior acts demonstrated a specific tendency, the relevance of the evidence could be separated from the improper inference that the defendant had a bad character.

*Yusem*, 210 P.3d at 467. The evidence in this case is parallel to that in *Douglas* and *Willner*, and not the evidence in *Yusem*.

12

¶ 32    Recall that during his 2022 interrogation, Adams-Cobb denied having a gun or an Impala.  Such evidence related to both the 2020 incident and the shooting — including, but not limited to, Shorts's testimony about the two incidents.  Because evidence of the 2020 incident contradicted Adams-Cobb's statements during the 2022 interrogation, it was relevant independent of the inference that Adams-Cobb acted in conformity with a bad character trait in 2022.  The 2020 police report showed that officers talked to Adams-Cobb inside a white Impala parked outside his and Shorts's home and recovered a gun from the Impala.  This evidence casts significant doubt on Adams-Cobb's assertion in 2022 that he did not own a gun or an Impala.

¶ 33    Shorts's testimony about the 2020 incident was also relevant to the jury's assessment of her credibility.  A witness's credibility is always relevant.  *See Margerum v. People*, 2019 CO 100, ¶ 10.  For example, evidence that Adams-Cobb had previously shot at Shorts explains why she did not cooperate with the 2020 investigation but cooperated with the 2022 investigation.  Furthermore, Shorts's decision to testify, despite her alleged fear of Adams-Cobb and concerns about not wanting to negatively impact his relationship

13

with their child, was relevant for the jury to consider in evaluating her testimony.

¶ 34 Thus, evidence of the 2020 incident was relevant independent of the inference that Adams-Cobb acted in conformity with a bad character trait two years later. We therefore reject Adams-Cobb's contention that the trial court abused its discretion by concluding that evidence of the 2020 incident did not violate the third *Spoto* prong.

¶ 35 We also reject Adams-Cobb's assertion that the trial court abused its discretion by finding that the relevance of the 2020 incident was not substantially outweighed by the danger of unfair prejudice it posed to Adams-Cobb. *See Spoto*, 795 P.2d at 1318; CRE 403. Specifically, the court found that the probative value was extremely strong because it suggested that Adams-Cobb owned a white Chevy Impala and a gun, and he had previously shot at Shorts. The record supports the trial court's conclusion that this evidence was relevant to the jury's assessment of the charges against Adams-Cobb and that its relevance was not substantially exceeded by any improper prejudice. Thus, we discern no error in

the trial court's finding that the evidence satisfied the fourth *Spoto* prong.

### C.    Adams-Cobb's Alleged Threat to Shorts's Mother

¶ 36    For the first time on appeal, Adams-Cobb argues that the trial court erroneously admitted evidence that he threatened Shorts's mother.  He argues that this evidence was inadmissible under both CRE 404(a) and 404(b).  First, from a procedural perspective, he argues that the prosecution failed to provide notice of its intent to introduce such evidence, as required under CRE 404(b)(3).  More substantively, Adams-Cobb argues that the purported threat to kill Shorts's mother did not render it any more or less probable that he committed the charged crimes.  Given the limited probative value of the threat and its prejudicial effect, Adams-Cobb argues that the jury was likely to use the evidence to infer that he had a violent character and acted in conformity with that bad character.

¶ 37    The People respond that, even if the trial court erred by admitting evidence of the threat, the error was not so obvious and substantial that it rose to the level of plain error.  *See Hagos*, ¶ 14.  Furthermore, even if the error was obvious, the People argue that it

15

does not undermine the reliability of the judgment of conviction to such a degree that it warrants reversal. *Id.*

### 1. Additional Facts

¶ 38 When officers arrived at the scene of the 2022 shooting, Shorts told them that Adams-Cobb had threatened to kill her mother and showed officers the earlier exchange in which Adams-Cobb texted Shorts, "[Y]o momma gone die u gone be a bum with nothing . . . ."

¶ 39 At trial, two detectives discussed their interactions with Shorts following the 2022 incident and the investigation into Adams-Cobb, which included the alleged threat. There was no evidence that Adams-Cobb acted on his alleged threat toward Shorts's mother.

### 2. Analysis

¶ 40 The People do not dispute that the prosecution failed to provide pretrial notice of its intent to introduce Adams-Cobb's purported threat against Shorts's mother. But Adams-Cobb does not develop any argument explaining why the absence of pretrial notice prejudiced him beyond the prejudice created by the substance of the alleged threat. Therefore, we do not address this argument further. *See People v. Liggett*, 2021 COA 51, ¶ 53 (appellate courts do not address undeveloped arguments).

¶ 41    But we agree with Adams-Cobb that his purported threat toward Shorts's mother was, at best, only marginally relevant.  The alleged threat occurred during a heated argument filled with personal insults, in which Adams-Cobb criticized Shorts's lack of employment.

¶ 42    Adams-Cobb did not actually text that he was going to kill Shorts's mother.  Given the context of the argument, the statement could be interpreted as a vague reference to the inevitable death of Shorts's mother and its fiscal impact on Shorts.  This ambiguity cuts both ways against the parties.  The debatable interpretation lessens the relevance of the text, but it also minimizes its prejudice.

¶ 43    In any event, even if the jury could have reasonably interpreted the text as a direct threat against Shorts's mother, we are not persuaded that its prejudicial impact was so great that its inadmissibility should have been obvious to the court in the absence of an objection.  Moreover, the fact that the evidence did not draw an objection is some indication that defense counsel did not view the testimony as overly prejudicial.  *See Domingo-Gomez v. People,* 125 P.3d 1043, 1054 (Colo. 2005) ("A reviewing court can consider the lack of an objection when evaluating the impact of a

17

prosecutor's argument."). Moreover, the trial produced no evidence to suggest that Adams-Cobb ever took any action to harm or attempt to harm Shorts's mother. The jury also received significant evidence demonstrating that the parties were in an ongoing conflict in which they exchanged many petty insults.

¶ 44 Ultimately, the jury acquitted Adams-Cobb of one of the most serious charges — attempted murder of Shorts. This acquittal suggests that the jury was not unduly inflamed by the alleged threat. *See People v. Manyik*, 2016 COA 42, ¶ 40 ("[T]he fact that the jury acquitted [the defendant] of the most serious charge — first degree murder — indicates that the jurors based their verdict on the evidence presented and were not swayed by the prosecutor's inflammatory appeal to their sympathy for the victim."). Thus, we cannot say that the admission of the threat evidence was an obvious and substantial error. *See Hagos*, ¶ 14.

¶ 45 Finally, the jury heard significant evidence of Adams-Cobb's guilt, including the extensive text exchanges leading up to the shooting; social media posts in which he allegedly said that he wished Shorts was dead; his repeated threats toward Shorts and David; his ownership of a white Chevy Impala; his possession —

contradicting his prior denial — of a gun and ammunition; and testimony that he previously fired a gun at Shorts. Given this evidence, we cannot conclude that the admission of the evidence of the alleged threat against Shorts's mother — even if erroneous — undermines the reliability of the judgment of conviction. *See id.*

### III. Hearsay Claim

¶ 46 Adams-Cobb's counsel argues, again for the first time on appeal, that the trial court erred by admitting Detective Joseph Duran's testimony recounting his conversation with Shorts in which she stated that Adams-Cobb had threatened to kill her mother. While the record is not clear, it appears that the threat that Shorts referenced was the text message discussed in the preceding section.

¶ 47 Adams-Cobb contends that the trial court abused its discretion by admitting Duran's testimony because it contained two layers of hearsay — (1) Adams-Cobb's text message to Shorts in which he allegedly threatened to harm her mother and (2) Shorts's statement to Duran about the alleged threat — without analyzing each layer of hearsay.

19

¶ 48 The People respond that Duran's testimony was not hearsay because Adams-Cobb's text was an admission by a party opponent. *See* CRE 801(d)(2)(A) ("A statement is not hearsay if . . . [it] is offered against a party and is . . . the party's own statement in either an individual or a representative capacity . . . ."). The People also argue that any error was harmless because the actual text message that contained the threat was admitted into evidence.

A. Standard of Review and Applicable Law

¶ 49 We review evidentiary rulings for an abuse of discretion. *Romero*, ¶ 11. This claim is also unpreserved, so we review it for plain error. *Martinez*, ¶ 12.

¶ 50 Hearsay is a "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay is not admissible unless it fits into an applicable exception. *See* CRE 802-804. If a statement has multiple layers of potential hearsay, the court must analyze each layer separately to determine whether it falls within a recognized hearsay exception or exclusion. *People v. Phillips*, 2012 COA 176, ¶ 101; *see* CRE 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part

20

of the combined statements conforms with an exception to the hearsay rule provided in these rules.").

### B.  Analysis

¶ 51  First, we agree with the People that Adams-Cobb's purported threat against Shorts's mother was not hearsay because it was an admission by Adams-Cobb, a party opponent, under CRE 801(d)(2)(a).  *See also* CRE 801(a) ("A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person to be communicative.").  And we reject Adams-Cobb's argument that the prosecution did not prove by a preponderance of the evidence that he made the statement.  *See People v. Glover*, 2015 COA 16, ¶ 40 (the People must prove a defendant's statement by a preponderance of the evidence for the admission to be admitted under CRE 801(d)(2)).  Shorts testified that Adams-Cobb made the statement, and a screenshot of Adams-Cobb's actual text message was admitted into evidence. This was sufficient to prove by a preponderance of the evidence that he made the statement.

¶ 52  But we agree with Adams-Cobb that Shorts's statement to Duran about the threat was hearsay.  And the People do not

identify an exception that applies in this circumstance; thus, the admission of Duran's testimony about what Adams-Cobb said was hearsay. Nevertheless, the error was harmless.

¶ 53     As previously noted, the text message was admitted into evidence. Adams-Cobb does not dispute that he sent the text. *See People v. Smith*, 77 P.3d 751, 760 (Colo. App. 2003) ("An error may be harmless where a defendant admits facts that make the improper evidence cumulative."); *see also People v. Joyce*, 68 P.3d 521, 524 (Colo. App. 2002) (victim's hearsay statements had little impact on the verdict because they were cumulative of other testimony). Thus, the admission of Duran's testimony about what Shorts told him of the threat does not undermine the reliability of the judgment of conviction, and we discern no plain error.

## IV.   Disposition

¶ 54     The trial court's judgment is affirmed.

JUDGE LIPINSKY and JUDGE YUN concur.